UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF INDIANA

HAMMOND DIVISION



| | |
|---|---|
| DAVID M. SHEPARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:26-cv-41 |
| ) | |
| TOWN OF MERRILLVILLE, INDIANA; ) | |
| MERRILLVILLE POLICE DEPARTMENT ) | |
| (a department of the Town of Merrillville); ) | |
| KONSTANTINOS NUSES, in his official capacity ) | |
| as Chief of Police of the Merrillville Police ) | |
| Department; ) | |
| JOHN DOE MERRILLVILLE POLICE OFFICERS 1–20, ) | |
| in their individual capacities; ) | |
| JOHN DOE MERRILLVILLE POLICE SUPERVISORS 1–10, ) | |
| in their individual capacities; and ) | |
| JOHN DOE MPD RECORDS/ADMIN PERSONNEL 1–5, ) | |
| in their individual capacities, ) | |
| ) | |
| Defendants. ) | |

COMPLAINT FOR DAMAGES AND OTHER RELIEF

(42 U.S.C. § 1983; Supplemental Indiana State-Law Claims)

JURY TRIAL DEMANDED

Plaintiff David M. Shepard ("Plaintiff" or "Shepard"), for his Complaint, alleges as follows:

## I. INTRODUCTION

1. This is a civil-rights action arising from a warrantless forced entry and interior search of Plaintiff's closed commercial business by officers/employees of the Merrillville Police Department ("MPD") on May 7, 2025, followed by the use of a false "alarm response" justification, incomplete/absent public reporting, and the dissemination of false criminal accusations that foreseeably destroyed Plaintiff's reputation, business relationships, and earning capacity.

2. Plaintiff alleges MPD officers arrived and remained on scene before any legitimate alarm activation, then forcibly breached the rear door and entered the premises at approximately 12:59 p.m., after which MPD documented the event as Incident #25ME11616 labeled "ALARM" at approximately 1:02 p.m. Plaintiff alleges the alarm activation occurred only after MPD entered, meaning MPD caused the alarm and then used it as the pretext for entry.

3. Plaintiff further alleges MPD officers, while acting under color of law, made defamatory statements to a customer that Plaintiff "had a warrant," that MPD would "make entry," and that Plaintiff would be charged with a Level 5 felony once officers entered. Plaintiff alleges these statements were false and were part of a pre-planned entry narrative.

4. Plaintiff seeks compensatory damages and other relief for violations of the Fourth Amendment and Fourteenth Amendment under 42 U.S.C. § 1983, municipal liability under Monell, and related Indiana common-law claims under this Court's supplemental jurisdiction.

5. Plaintiff's total damages demand is currently estimated at $7,620,000.00 (subject to proof and supplementation), including compensatory damages and punitive damages

against individual defendants to the extent permitted by law, plus costs and any fees as allowed.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

7. This Court has supplemental jurisdiction over Plaintiff's Indiana-law claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as the federal claims.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred in Lake County, Indiana, within the Hammond Division.

## III. PARTIES

9. Plaintiff David M. Shepard is an adult resident of Indiana residing at 3994 Willowood Court, Crown Point, IN 46307, phone (219) 444-5641.

10. At all relevant times, Plaintiff worked for and held a 49% ownership interest in Hoosier Diesel & Off-Road, Inc. Plaintiff's 49% interest was independently valued at approximately $1,200,000 prior to the events described herein.

11. Defendant Town of Merrillville, Indiana ("Town") is a municipal corporation. The Town is responsible for MPD policies, customs, practices, training, supervision, discipline, and retention of MPD employees.

12. Defendant Merrillville Police Department ("MPD") is the Town's police department. MPD is named because it is the agency that conducted the entry and investigation. To the extent MPD is not a separate suable entity, the Town is the proper municipal defendant, and the allegations against MPD are alleged against the Town and its policymakers.

13. Defendant Konstantinos Nuses is the Chief of Police of MPD and is sued in his official capacity only. Chief Nuses is a final or high-level policymaking official for MPD operations, supervision, training, evidence handling, incident reporting, and responses to complaints relating to MPD conduct.

14. Defendants John Doe MPD Officers 1–20 are unknown MPD officers who participated in, assisted, approved, or failed to prevent the warrantless entry and search, and/or who communicated false criminal accusations about Plaintiff while acting under color of law. Plaintiff sues them in their individual capacities. Their identities will be substituted after disclosure through public records and discovery.

15. Defendants John Doe MPD Supervisors 1–10 are unknown MPD supervisors (including sergeants, lieutenants, shift commanders, and incident commanders) who authorized, directed, approved, ratified, or failed to stop the unconstitutional conduct, and/or failed to require lawful warrant procedures and accurate reporting. Plaintiff sues them in their individual capacities. Their identities will be substituted after disclosure through public records and discovery.

16. Defendants John Doe MPD Records/Admin Personnel 1–5 are unknown MPD personnel responsible for records, report creation/retention, incident classification, CAD documentation, and/or responses to Plaintiff's requests for a full police report, who participated in creating, maintaining, withholding, or misclassifying records related to the incident. Plaintiff sues them in their individual capacities. Their identities will be substituted after disclosure through discovery.

## IV. INDIANA TORT CLAIM NOTICE (STATE CLAIMS)

17. Plaintiff served a timely Indiana Tort Claims Act notice on the Town of Merrillville (Town Council c/o Clerk-Treasurer) and on the Indiana Political Subdivision Risk Management Commission on or about November 3, 2025, regarding the May 7, 2025 occurrence and related harms.

18. Plaintiff further supplemented the municipal claim record in December 2025 with documentary exhibits including:

   a. Exhibit C-3 (email dated October 9, 2024 reflecting advance notice of criminal charging intent communicated to a private attorney);

   b. Exhibit C-4 (email dated February 22, 2024 forwarding criminal pleadings concerning Plaintiff); and

   c. Exhibit C-5 (materials referencing a November 27, 2024 hearing transcript and denial of an order for protection, submitted to rebut later "dangerousness" narratives used to justify targeting).

19. This Complaint is filed after the expiration of the municipal response/evaluation period under Indiana law, and Plaintiff treats the claim as denied for purposes of suit.

## V. FACTUAL ALLEGATIONS

### A. Plaintiff's Business Premises and Privacy Interest

20. On May 7, 2025, the relevant premises were the closed commercial diesel repair business location known as Hoosier Diesel & Off-Road, Inc., located at 9070 Louisiana Street, Suite B, Merrillville, Indiana 46410 (the "Premises").

21. The Premises contained private interior areas not open to the public when closed. Plaintiff had a reasonable expectation of privacy in the secured areas of the Premises.

### B. Pre-Entry Statements to Customer and Planned "Make Entry" Narrative

22. On or about May 6–7, 2025, a customer, Katie McKee, contacted MPD regarding concerns about her vehicle.

23. Plaintiff alleges that prior to the entry, MPD personnel told Ms. McKee that Plaintiff "had a warrant," that MPD would "make entry" into the Premises, and that Plaintiff would be charged with a Level 5 felony once MPD entered and verified the vehicle status.

24. Plaintiff alleges these statements were false and defamatory, made under color of law, and were intended to justify or pressure a warrantless entry into Plaintiff's Premises.

### C. The May 7, 2025 Warrantless Forced Entry and Search

25. On May 7, 2025, MPD officers arrived at the Premises at approximately 12:48 p.m. and remained on scene while canvassing the property and neighboring units.

26. MPD did not present a search warrant at any time. MPD did not obtain Plaintiff's consent.

27. Rather than seeking a warrant or waiting for lawful access, MPD officers forcibly breached the rear door and entered the Premises at approximately 12:59 p.m.

28. MPD officers conducted an interior search, "looking around" within the private commercial premises.

29. Additional MPD units arrived thereafter. MPD personnel continued entry/activities inside and outside the Premises until at least approximately 1:09 p.m.

### D. False "Alarm Response" Pretext and Missing/Incomplete Reporting

30. MPD later claimed the entry was an "alarm response."

31. Plaintiff alleges this explanation is false and pretextual because, as documented by Plaintiff's evidence and alarm-company data, no alarm occurred until after MPD made entry.

32. MPD records associated the event with Incident #25ME11616, labeled "ALARM" at approximately 1:02 p.m. Plaintiff alleges the timing of this classification is consistent with MPD triggering the alarm through forced entry and then labeling the event as an alarm response.

33. After the incident, Plaintiff requested the police report. Plaintiff was informed that no full report existed and that only the incident number and alarm classification were available.

34. Plaintiff alleges that MPD created, maintained, and/or relied upon incomplete and/or false documentation to conceal an unconstitutional entry and search and to reduce accountability.

### E. Corroboration from Neighboring Business Manager (Hernandez Email)

35. On June 5, 2025, Ralph Hernandez, General Manager of Tronics America, Inc. (a neighboring business), emailed Plaintiff confirming key facts about MPD's actions that day.

36. In substance, Hernandez stated:

   a. An officer came by asking if Plaintiff was on the property;

   b. Hernandez intended to go open the door if needed, but was briefly delayed;

   c. When Hernandez arrived a couple minutes later, the alarm was already sounding; he waited at the front door for 5–10 minutes while additional officers arrived; and

   d. An officer came from the side of the building and told Hernandez that he did not need access because the back door was already open.

37. Plaintiff alleges this corroborates that MPD did not need to force entry, that a lawful alternative (waiting for access) existed, and that MPD's "alarm response" narrative is inconsistent with the observed sequence of events.

### F. Public Accusations and Publications (Amplified Harm)

38. Plaintiff alleges that criminal accusations against Plaintiff were publicly amplified, including through social-media publications dated January 10, 2025 and May 1, 2025, which attributed criminal accusations to Merrillville officials and displayed photos of Plaintiff's home and business.

39. Plaintiff alleges MPD officers and/or Town employees caused or materially contributed to those publications by providing defamatory information, images, and/or confirmation under color of authority.

### G. Pattern Evidence of Improper Disclosure and "Pre-Determined" Criminal Treatment (C-3 / C-4)

40. Plaintiff alleges that MPD's targeting of Plaintiff occurred in a broader context of improper coordination or disclosure of criminal information to private adversarial actors.

41. Plaintiff possesses an email dated October 9, 2024 at 4:26 p.m. from attorney Irene Gasparis to Jacilyn Shepard stating verbatim:

  "Hi, just letting you know your husband is going to be criminally charged by the Merrillville police department today. I'll call you later when I get to my office. He also has an attorney that called me...atty reed?"

42. Plaintiff also possesses an email dated February 22, 2024 from attorney Irene Gasparis to Jacilyn Shepard stating: "Here you go," with an attached PDF file titled in part "Shepard cri...pdf," containing criminal pleadings involving Plaintiff.

43. Plaintiff alleges these communications support the inference that MPD or other governmental actors disclosed criminal charging information or pleadings to a private attorney aligned against Plaintiff, demonstrating bias, retaliatory motivation, and abuse of authority that culminated in the May 7, 2025 unlawful entry and defamation.

### H. Rebuttal of "Danger" Narrative (C-5)

44. Plaintiff supplemented the municipal claim record with materials referencing a November 27, 2024 hearing transcript in Lake Circuit Court (In Re the Marriage of Shepard) indicating, among other things:

  a. Plaintiff's MRAP ("SWAT") vehicle operation was described as authorized test driving for repair work for a law-enforcement agency;

  b. Plaintiff's move-out from the marital residence occurred under law-enforcement supervision; and

  c. After testimony, the court denied the petition for an order for protection and vacated the ex parte order.

45. Plaintiff alleges these sworn proceedings materially rebut later narratives portraying Plaintiff as a violent or dangerous individual and show that neutral adjudicators rejected the danger narrative when tested.

I. Termination, Business Closure, and Damages

46. Following the May 7, 2025 unlawful entry and the ensuing reputational harm and business disruption, the majority (51%) owner shut down the company and Plaintiff was removed/terminated from his role.

47. Plaintiff alleges that Defendants' unconstitutional and defamatory conduct proximately caused:

   a. Loss of Plaintiff's 49% ownership value (estimated $1,200,000);

   b. Lost income and future earning capacity;

   c. Loss of customers, goodwill, and business contracts;

   d. Property/security damage to the Premises (rear door/locks/alarm/security remediation); and

   e. Severe emotional distress, humiliation, anxiety, and reputational stigma.

48. Plaintiff's current total damages demand is $7,620,000.00 (subject to proof and supplementation), including but not limited to:

   a. Property & security damage: $20,000;

   b. Business interruption: $250,000;

   c. Lost 49% ownership value: $1,200,000;

   d. Lost wages & earning capacity: $900,000;

   e. Defamation / reputation / goodwill destruction: $850,000;

   f. Emotional distress: $400,000;

   g. Punitive damages (individual officers only): $3,000,000; and

   h. Estimated litigation expenses and potential attorney fees if awarded as permitted by law: $1,000,000.

## VI. CLAIMS FOR RELIEF

### COUNT I — 42 U.S.C. § 1983 (Fourth Amendment)

**Unreasonable Warrantless Entry and Search**

(Against John Doe MPD Officers 1–20)

49. Plaintiff incorporates paragraphs 1–48.

50. The Fourth Amendment prohibits unreasonable searches and seizures, including unreasonable entry into closed commercial premises.

51. John Doe MPD Officers entered and searched Plaintiff's private commercial premises on May 7, 2025 without a warrant, without consent, and without exigent circumstances.

52. Defendants had time and lawful alternatives (including obtaining a warrant and/or waiting for authorized access). A neighboring business manager was available and indicated willingness to open access if needed.

53. Defendants' conduct violated Plaintiff's Fourth Amendment rights and caused Plaintiff damages.

### COUNT II — 42 U.S.C. § 1983 (Fourth Amendment)

**Unreasonable Seizure / Property Damage**

(Against John Doe MPD Officers 1–20)

54. Plaintiff incorporates paragraphs 1–53.

55. The forced breach of the rear door and resulting security/property damage constituted an unreasonable seizure and destruction of property under the Fourth Amendment.

56. Plaintiff suffered damages including repair costs, security remediation costs, and associated economic losses.

**COUNT III — 42 U.S.C. § 1983 (Fourteenth Amendment)**

**Fabrication / False Pretext and Deprivation of Liberty/Property Interests (Stigma-Plus)**

(Against John Doe MPD Officers 1–20 and John Doe MPD Records/Admin Personnel 1–5)

57. Plaintiff incorporates paragraphs 1–56.

58. MPD personnel used a false or manufactured "alarm response" narrative to justify an unconstitutional entry and to reduce accountability, including by labeling the matter as Incident #25ME11616 "ALARM" while failing to maintain or produce a complete report.

59. MPD personnel also made stigmatizing statements imputing serious criminal conduct to Plaintiff (including claims that Plaintiff had a warrant and would be charged with a felony), which were communicated to third parties under color of law.

60. Those stigmatizing statements were accompanied by tangible harms ("plus" factors), including business collapse, termination, loss of ownership value, and loss of business relationships.

61. Defendants thereby deprived Plaintiff of liberty and property interests without due process of law.

**COUNT IV — 42 U.S.C. § 1983**

**Failure to Intervene**

(Against John Doe MPD Officers 1–20 and John Doe MPD Supervisors 1–10)

62. Plaintiff incorporates paragraphs 1–61.

63. Officers and supervisors present had a realistic opportunity to prevent or stop the warrantless entry and unconstitutional conduct but failed to do so.

64. Their failure to intervene caused or contributed to Plaintiff's damages.

## COUNT V — MUNICIPAL LIABILITY (Monell) — 42 U.S.C. § 1983

### Policy/Custom/Failure to Train/Supervise/Ratification

(Against the Town of Merrillville, MPD (to the extent suable), and Chief Konstantinos Nuses in his Official Capacity)

65. Plaintiff incorporates paragraphs 1–64.

66. Plaintiff alleges that the unconstitutional conduct was caused by one or more municipal policies, customs, practices, or deliberate indifference, including but not limited to:

   a. Failure to train officers on warrant requirements and the narrow scope of exigent circumstances for entry into closed commercial premises;

   b. Failure to require supervisory approval and documentation before forced entry;

   c. A practice/custom of using an "alarm" label as a post-hoc justification for entry without verifying alarm origin or timing;

   d. Failure to ensure accurate reporting and retention of incident documentation;

   e. Failure to supervise/discipline officers who conduct warrantless entries or make defamatory criminal accusations to third parties; and

f. Ratification by supervisors/policymakers through approval, silence, refusal to correct records, or refusal to identify involved officers.

67. The Town's policies/customs/failures were the moving force behind the violation of Plaintiff's constitutional rights and resulting damages.

## VII. INDIANA STATE-LAW CLAIMS (SUPPLEMENTAL JURISDICTION)

### COUNT VI — Trespass / Property Damage

(Against the Town of Merrillville and John Doe MPD Officers 1–20)

68. Plaintiff incorporates paragraphs 1–67.

69. Defendants intentionally and unlawfully entered Plaintiff's Premises without authorization and caused damage to the rear door and related security components.

### COUNT VII — Defamation Per Se / False Light (Indiana Common Law)

(Against John Doe MPD Officers 1–20 and John Doe MPD Supervisors 1–10; and against the Town to the extent permitted)

70. Plaintiff incorporates paragraphs 1–69.

71. Defendants published and/or caused publication of false statements imputing serious criminal conduct to Plaintiff, including claims that Plaintiff had a warrant and would be charged with a felony, and caused the public portrayal of Plaintiff as criminal.

72. These statements were false, made at least negligently and in many instances with reckless disregard for truth, and caused substantial reputational and economic harm.

**COUNT VIII — Tortious Interference with Business Relationships**

(Against the Town of Merrillville and John Doe MPD Officers 1–20)

73. Plaintiff incorporates paragraphs 1–72.

74. Plaintiff had business relationships and expectancies with customers and the market.

75. Defendants knowingly and wrongfully interfered with those relationships through unlawful entry, false criminal accusations, and resulting stigma, causing cancellation of work and loss of goodwill and business value.

**COUNT IX — Intentional Infliction of Emotional Distress**

(Against John Doe MPD Officers 1–20)

76. Plaintiff incorporates paragraphs 1–75.

77. Defendants' conduct—breaking into Plaintiff's business without a warrant, manufacturing a pretext, and spreading criminal accusations—was extreme and outrageous, and intentionally or recklessly caused Plaintiff severe emotional distress.

**COUNT X — Negligent Hiring, Training, Supervision, and Retention (Indiana)**

(Against the Town of Merrillville)

78. Plaintiff incorporates paragraphs 1–77.

79. The Town owed duties to properly train and supervise MPD personnel regarding lawful entry/search procedures, accurate reporting, and limits on communications imputing criminal wrongdoing.

80. The Town breached those duties, proximately causing Plaintiff's damages.

## VIII. DAMAGES

81. Plaintiff has suffered damages including, but not limited to: property/security damage; business interruption; loss of business ownership value; lost wages and earning capacity; reputational damages; emotional distress; and other consequential losses.

82. Plaintiff seeks compensatory damages currently estimated at $3,620,000.00 (subject to proof and supplementation), and seeks punitive damages against individual officers to the extent permitted by federal law. Plaintiff's current total damages demand is estimated at $7,620,000.00 (subject to proof and supplementation). Punitive damages are not sought against the Town.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment in his favor and that the Court:

A. Award compensatory damages in an amount to be proven at trial (currently estimated at $3,620,000.00);

B. Award punitive damages against individual John Doe officers/supervisors to the extent permitted by law (currently estimated at $3,000,000.00);

C. Award costs of suit and such fees as may be available under 42 U.S.C. § 1988 and other applicable law;

D. Issue appropriate declaratory relief that Defendants' warrantless entry/search violated the Fourth Amendment;

E. Issue appropriate injunctive relief to preserve evidence and prevent spoliation, including preservation of body-worn camera, dash camera, CAD/dispatch audio and logs, reports, and internal communications relating to the May 7, 2025 incident and Incident #25ME11616; and

F. Grant such other and further relief as the Court deems just and proper.

TOTAL AMOUNT DEMANDED (ESTIMATE): $7,620,000.00 (subject to proof and supplementation).

## X. JURY DEMAND

83. Plaintiff demands a trial by jury on all issues so triable.

## XI. VERIFICATION (28 U.S.C. § 1746)

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February __, 2026

*David M. Shepard* (signature)

David M. Shepard (Pro Se)

3994 Willowood Court

Crown Point, IN 46307

Phone: (219) 444-5641

Email: dshep678@gmail.com